

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Mark W. Crooks*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4867*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*Mark.Crooks@usdoj.gov*

March 7, 2011

Paula Xinis
Office of the Federal Public Defender
6411 Ivy Lane
Suite 710
Greenbelt, Maryland 20770

WDQ-11-00167
USA vs. WARWICK

Dear Ms Xinis:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to Ann Warwick ("the Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by March 15, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty to a Criminal Information, which will charge her with one count of making false statements in a matter within the jurisdiction of the National Security Agency, in violation of 18 U.S.C. § 1001. The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a. The Defendant made a statement or representation.

Revised 11/5/09

-1-



*Ms. Paula Xinis, Esq.*
*March 7, 2011*

      b. The statement or representation was material.
      c. The statement or representation was false, fictitious, or fraudulent.
      d. The false, fictitious, or fraudulent statement was made knowingly and willfully; and
      e. The statement or representation was made in a matter within the jurisdiction of the executive branch of the Government of the United States.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: five years of imprisonment, a $250,000 fine, and three years of supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

    a. If the Defendant had not consented to the filing of an information and a subsequent plea of guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Ms. Paula Xinis, Esq.
March 7, 2011

unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

       c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

       d.      The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

       e.      If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal a verdict and the Court's decisions.

       f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

       g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

       h.      By pleading guilty, the Defendant may face collateral consequences as a result of her conviction including, but not limited to, the loss of her security clearances or the inability to own or carry firearms.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing

Ms. *Paula Xinis, Esq.*
*March 7, 2011*

guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

   6. This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

> Base Offense Level: The parties agree that the base offense level is 6 under U.S.S.G. § 2B1.1(a)(2).
>
> Loss: An increase of 8 levels under U.S.S.G. § 2B1.1(b)(1)(E) is warranted because the loss was greater than $70,000, but not greater than $120,000.
>
> Acceptance of Responsibility: This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct pursuant to U.S.S.G. § 3E1.1(a). This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty except as permitted under Fed. R. Crim. P. 11(a)(2).
>
> Total Offense Level: Assuming that the Defendant receives credit for acceptance of responsibility, the Defendant's Total Offense Level will be 12.

   7. The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of his income.

   8. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors,

*Ms. Paula Xinis, Esq.*
*March 7, 2011*

potential departures, or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant may argue for a variance sentence under 18 U.S.C. § 3553(a). If the Defendant intends to argue for a variance sentence, she will file a sentencing memorandum at least 10 days prior to the sentencing hearing setting forth all of her arguments for a variance. This Office may oppose the Defendant's request for a variance sentence.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, pursuant to U.S.S.G. § 5C1.1(d)(2) and according to the schedule established in U.S.S.G. § 5C1.1(e). Further, this Office will request restitution in the amount of $108,780.46, the government's loss.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b) The Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 16 months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 5 months' imprisonment and 5 months' community or home confinement.

   c) Nothing in this agreement shall be construed to prevent the Defendant or this

Ms. Paula Xinis, Esq.
March 7, 2011

    Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

  d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any

*Ms. Paula Xinis, Esq.*
*March 7, 2011*

sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

14.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

Ms. Paula Xinis, Esq.
March 7, 2011

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Mark W. Crooks
Assistant United States Attorney

    I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3·23·11
Date

Ann Warwick

    I am Ann Warwick's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

3·23·11
Date

Paula Xinis, Esq.

Ms. Paula Xinis, Esq.
March 7, 2011

## ATTACHMENT A

*This Office and the Defendant stipulate and agree to the following facts that the United States would have proved beyond a reasonable doubt had this case proceeded to trial. They further stipulate and agree that these are not all of the facts that the United States would have proven.*

1. At all times relevant to this case, NSA was a component of the U.S. Department of Defense, which was part of the executive branch of the United States Government.

2. In or about July 2004, NSA contracted with Science Applications International Corporation ("SAIC") to obtain certain intelligence analyst services. SAIC agreed to provide those services under the terms of a time-and-materials contract (the "Services Contract") following the issuance of a Statement of Work. SAIC, in turn, entered into a subcontract with Business, Consulting, Technology LLC ("BCT"), pursuant to which BCT employees worked on the Services Contract.

3. The Defendant was working full-time for BCT during the period from August 17, 2009 to July 15, 2010. She worked exclusively on the Services Contract. The Defendant's duty station with respect to the Services Contract was located within NSA Headquarters, Fort George G. Meade, Maryland, and the Defendant was required to work only at Headquarters when working on the Services Contract. The Defendant worked in NSA space under a grant of access by the NSA Associate Directorate for Security and Counterintelligence.

4. BCT required the Defendant to submit a weekly timesheet each Friday for the hours that she worked that particular week. In those timesheets, the Defendant was required to state the number of hours that she had worked on the Services Contract. The Defendant received regular paychecks from BCT. While working for BCT, the Defendant was paid, in part, based on the number of hours she had claimed to work on the Services Contract for the pay periods in question.

5. Based on the hours that the Defendant claimed in her timesheets to have worked on the Services Contract, BCT periodically invoiced SAIC for such hours. SAIC, in turn, periodically invoiced NSA for the hours that the Defendant claimed to have worked on the Services Contract. After NSA received invoices from SAIC, which included the amounts invoiced for hours that the Defendant had reported to that she had worked on the Services Contract, NSA paid SAIC for such claimed hours at rates that were specified in the Services Contract. SAIC, in turn, made payments to BCT for the Defendant's claimed hours.

6. Between approximately August 17, 2009 to July 15, 2010, the Defendant submitted, and caused to be submitted, false timesheets to BCT claiming that she had worked approximately 836 hours

*Ms. Paula Xinis, Esq.*
*March 7, 2011*

more than she had actually worked on the Services Contract.

7. In addition to falsely stating the number of hours that she had worked on more than 150 days, the Defendant submitted false timesheets for 57 separate days wherein she represented that she had worked an average of nine hours when, in fact, she did not work *at all* those days and did not come to the NSA facility.

8. SAIC invoiced NSA for the hours that the Defendant falsely claimed to have worked on the Services Contract, SAIC paid BCT for the hours not worked by the Defendant, and BCT paid the Defendant. The overpayment by NSA for the Defendant's unworked hours was approximately $108,780.46.

9. NSA did not learn of the Defendant's unworked hours until after NSA had already paid SAIC for those hours, and after SAIC, in turn, had already paid BCT for such hours.

10. Between August 17, 2009 to July 15, 2010, in the District of Maryland, the Defendant knowingly and willfully submitted materially false timesheets to BCT for the inclusive pay periods, during which she claimed that she had worked 836 hours more than she had, in fact, worked.